THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff

    v.

WILLIAM E. KINCAID, II,

    Defendant.

:
:
:
:
:

Case No. 3:25-cr-47(1)

Judge Walter H. Rice

---

DECISION AND ENTRY OVERRULING MOTION TO SUPPRESS OF DEFENDANT
WILLIAM E. KINCAID, II (DOC. #21) AND MOTION FOR HEARING UNDER *FRANKS
V. DELAWARE* (DOC. #33), AND OVERRULING AS MOOT MOTION TO STRIKE OF
PLAINTIFF UNITED STATES OF AMERICA (DOC. #37)

---

This matter is before the Court on the Motion to Suppress of Defendant

William E. Kincaid, II (Doc. #21), Defendant's Motion for a Hearing Pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks* Hearing") (Doc. #33), and Plaintiff

United States of America's ("Government") Motion to Strike Defendant's Reply

Memorandum. (Doc. #37). On March 24, 2025, Judge Kimberly Melnick of the

Montgomery County, Ohio, Court of Common Pleas issued a Search Warrant

(Doc. #29-1, PAGEID 85-86) for 4591 Toni Drive in Dayton, Ohio ("Property"). The

issuance of the warrant was based on the information contained in the Search

Warrant Affidavit of Drug Enforcement Administration (DEA) Task Force Officer

(TFO) Gregory Orick. (Affidavit, Doc. #29-1, PAGEID 87-90).

In the Affidavit, Orick stated that he received information in June 2023 from a reliable confidential informant ("CI") that Defendant was supplying his son, Jared Kincaid, with fentanyl, which Jared was then selling. (Doc. #29-1, PAGEID 88). In October 2023, Orick was contacted by DEA TFO Steve Cieslinski, who stated that DEA had noticed suspicious shipping of parcels to the Property that were addressed to Defendant's five-year old son; in Orick's experience, this is a sign of drug trafficking activity. (*Id.*). In February 2024, Orick received word from a CI with a history of providing accurate information that the CI had seen Defendant at the Property with a brick of fentanyl, and that Defendant then pressed that fentanyl into over 100,000 pills. (*Id.*). In April 2024, the City of Dayton, Ohio, Police Department ("DPD") arrested a Jason Davidson for drug possession, and Davidson told DPD Detective Dustin Phillips that he had bought fentanyl from Defendant. (*Id.*). A search of Davidson's phone revealed a photo of "a marbleized countertop with approximately 1,000 blue fentanyl pills. A CI familiar with this investigation . . . stated [that] the countertop is consistent with that of William Kincaid's kitchen countertop." (*Id.*).

On June 26, 2024, after being told by a CI "familiar with this investigation" that Defendant was in possession of three bricks of fentanyl, which he was making into pills, Orick and other DEA agents surveilled the Property. (Doc. #29-1, PAGEID 88-89). Orick noticed a car in front of the Property registered to a "Matthew Barnett whom [*sic*] has an extensive drug history[,]" and a maroon Chevrolet Silverado pickup believed to be associated with Defendant by virtue of

2

it being registered to Defendant's girlfriend. Orick also observed Kincaid and others in front of the Property; however, law enforcement's observations "were deemed innocent in nature and the surveillance was concluded." (*Id.* at PAGEID 89). On October 24, 2024, a Robert McPherson told DPD Detective Cody Hartings that he had bought fentanyl from Defendant, who delivered the drugs in a maroon pickup truck. Hartings relayed this information to Orick; however, Orick was unable to follow up with McPherson. Finally, in March 2025, a CI who Orick claimed had provided reliable information in the past stated that he or she had observed between 15,000 and 18,000 fentanyl pills at the property. (*Id.*).

Based on this information in the Affidavit, Judge Melnick issued a search warrant for the Property on March 24, 2025, and DEA and DPD executed the warrant the next day. (Compl., Doc. #1, PAGEID 4, ¶¶ 7-8). DPD saw Defendant at the Property and detained him while officers searched the Property. (*Id.* at ¶ 8). The officers' search revealed a Glock handgun, ammunition, crack cocaine, fentanyl, a vacuum sealer, and a hydraulic press, among other items. (*Id.* at PAGEID 4-5, 6, 7-8, ¶¶ 10, 14-16, 18-19). The officers also observed and searched the maroon Chevrolet Silverado at the Property. (*Id.* at PAGEID 8, ¶ 20). The Government filed a criminal Complaint on March 26, 2025, containing the above information (Doc. #1); based on that information, Magistrate Judge Caroline H. Gentry issued an Arrest Warrant for Defendant that day. (Doc. #2). On June 10, 2025, a grand jury returned an Indictment against Defendant for possessing with intent to distribute fentanyl, possessing a firearm in furtherance of drug

3

trafficking, and possessing a firearm as a convicted felon. (Indictment, Doc. #18, PAGEID 38-40).

Defendant moved to suppress all evidence from the search, arguing that there was not sufficient evidence in the Affidavit for Judge Melnick to make a probable cause finding; the information in the affidavit was stale; and the CIs' information "was not sufficiently corroborated or shown to be reliable." (Doc. #21, PAGEID 45). Specifically, Defendant asserts that the information regarding parcels being shipped to Defendant's son amounted to impermissible "guilt by association," since there was no evidence that the parcel allegedly containing drugs that was sent to the Property "was retrieved by [Defendant], possessed by him, or had anything to do with him." (*Id.* at PAGEID 46, citing *United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006)). Moreover, Orick conceded in the Affidavit that the information received from a CI that he had seen drugs in Defendant's possession "'was viewed as stale and not actionable.'" (*Id.*, quoting Doc. #29-1, PAGEID 88; citing *Dickey v. Florida*, 398 U.S. 30, 37 (1970)).

Defendant claims that Orick failed to corroborate the information given to him by another CI that Defendant was processing bricks of fentanyl into pills—the information that served as the basis for the initial surveillance of the Property— and that Orick failed to disclose that the CI was receiving favorable treatment from the Government in exchange for incriminating information regarding Defendant. (Doc. #21, PAGEID 46-47). Finally, Defendant argues that the Affidavit improperly relied on stale information regarding Defendant's past criminal history. (*Id.* at

4

PAGEID 47). Taken together, Defendant concludes, there was not probable cause to support the issuance of the warrant, and he "requests this Court to suppress from use at his trial all unconstitutionally gained evidence, as well as derivative evidence obtained as a result of unlawful police activity." (*Id.*, citing *State v. Belton*, 8th Dist. Cuyahoga No. 112813, 2024-Ohio-2357 (Jun. 20, 2024); *State v. Brown*, 5th Dist. Tuscarawas No. 2009AP050024, 2010-Ohio-1110, ¶ 27 (Mar. 18, 2010); *see also Wong Sun v. United States*, 371 U.S. 471 (1963) (fruit of the poisonous tree doctrine)).

The Government responds that the Motion is unavailing, because "[t]he concrete, specific facts articulated in TFO Orick's [A]ffidavit establish precisely the kind of 'fair probability' the Fourth Amendment requires." (Memo. In Opp., Doc. #29, PAGEID 72, citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*)). Specifically, the Government notes that, just one day before the issuance of the warrant, a reliable CI told law enforcement that he or she had personally seen between 15,000 and 18,000 fentanyl pills and more than one-half of one pound of fentanyl at the Property. The Government argues that the CI's specificity and history of reliability "strongly support[] probable cause." (*Id.* at PAGEID 72-73, citing *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Tilman*, 404 F. App'x 949, 952 (6th Cir. 2010)).

Further, the Government emphasizes that the information from the CI was not presented in a vacuum, but was part of a yearlong investigation into

5

Defendant, wherein law enforcement received information on at least five

occasions that Defendant was processing fentanyl into pills for sale. (Doc. #29,

PAGEID 73). "All these facts allowed Judge Melnick to arrive at the 'practical,

common-sense' conclusion that 'there is a fair probability that contraband or

evidence of a crime will be found at the residence at issue.'" (*Id.* (brackets

removed), quoting *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004)).

Thus, the Government argues, even if the Court were to discount the statements

of the CI, there was more than enough information in the Affidavit for Judge

Melnick to arrive at a reasonable probable cause determination. (*Id.* at PAGEID

74, citing *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)).

The Government then sets out the elements this Court must undertake in a

staleness analysis:

> (1) the character of the crime (chance encounter in the night or
> regenerating conspiracy?); (2) the criminal (nomadic or entrenched?);
> (3) the thing to be seized (perishable and easily transferrable or of
> enduring utility to its holder?); and (4) the place to be searched (mere
> criminal forum of convenience or secure operational base?).

(Doc. #29, PAGEID 74-75, quoting *United States v. Abboud*, 438 F.3d 554, 572-73

(6th Cir. 2006)). The Government argues that the first two factors weigh against

finding the information in the Affidavit stale, as it detailed nearly two years of law

enforcement regularly receiving "information about the defendant trafficking

fentanyl and utilizing [the Property] to do so. Evidence of ongoing criminal

activity generally defeats a claim of staleness and renders older events relevant to

the probable cause calculus." (*Id.* at PAGEID 75, citing *Abboud*, 438 F.3d at 573;

6

*United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)). As to the third factor, the Government argues that the large quantities of fentanyl being processed would have made transport of the drugs highly problematic, and the fact that Defendant had the press to make the fentanyl into pills at the Property meant that it was likely that the drugs would be at the Property at the time of the search. (*Id.* at PAGEID 76). Finally, the amount of drugs and paraphernalia, along with the Glock firearm, discovered at the Property, a site at which Defendant resided or with which he was closely associated, strongly suggest that the Property was the "secure operational base[.]" Thus, the Government argues, "the passage of time becomes less significant." (*Id.* at PAGEID 76-77, quoting *Abboud*, 438 F.3d at 573-74; citing *Greene*, 250 F.3d at 481).

Further, while the Government concedes that the Affidavit did not specify whether there was a single CI or multiple CIs, it argues that such a distinction is immaterial, because "the conclusion is the same – there is sufficient information to support probable cause and the CI(s)." (Doc. #29, PAGEID 79). Specifically, the Government asserts that the CI information regarding seeing fentanyl at the Property in March 2025 was corroborated by information from Jason Davidson in April 2024 that he had received purple fentanyl at the Property; Davidson's statement was, in turn, corroborated by law enforcement finding purple fentanyl at Davidson's residence and a statement by Robert McPherson that he knew Defendant to use purple chalk to color the fentanyl he sold. (*Id.* at PAGEID 79-80). The Government concludes that the above constituted sufficient indicia of

7

reliability of the March 2025 CI's statement, along with his or her history of reliability, and thus, it was reasonable for Judge Melnick to rely upon that information in the Affidavit to issue the warrant. (*Id.* at PAGEID 80). Finally, although not expressly challenged by Defendant, the Government asserts that the Affidavit contained ample evidence of nexus between the Property and drug trafficking activity. (*Id.* at PAGEID 80-81, citing *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016)). Thus, the Government concludes, the Affidavit contained more than enough reliable information for Judge Melnick to conclude that probable cause existed to issue the warrant. (*Id.* at PAGEID 84).

Alternatively, the Government argues that "the warrant contained 'some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched' that the affidavit is not bare bones and official reliance on it is reasonable." (Doc. #29, PAGEID 83, quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). Thus, the Government concludes, even if probable cause did not exist, the "good-faith exception" established by *United States v. Leon* and its progeny applies to save the evidence from suppression. (*Id.* at PAGEID 82-83, citing *Leon* 468 U.S. 897, 906 (1984); *Washington*, 380 F.3d at 241).

In Reply, Defendant argues that the undisputed facts that the Affidavit (1) did not specify how many CIs provided information, and (2) contained Orick's concession that at least one crucial piece of information was stale mean that the CI information was objectively unreliable and lacked sufficient corroboration. (Doc. #32, PAGEID 96). Defendant claims that the person he believes to be the CI

8

brought fentanyl pills to the Property, without Defendant's consent, in the hopes of selling them to Defendant, but that Defendant never bought the drugs, and that the interaction took place not in the kitchen, as Orick averred, but in a shed that was under construction in the backyard of the Property. (*Id.* at PAGEID 96-97). Defendant contends that the other statements in the Affidavit amount to guilt by association (a pickup truck that is registered to Defendant's girlfriend and a package addressed to his son) and baseless speculation that he had knowledge of and participation in receipt or sale of fentanyl. (*Id.* at PAGEID 97-98, quoting *Lopez-Medina*, 461 F.3d at 741-42).

On January 5, 2026, the Government filed a Motion to Strike, arguing that Defendant's Reply "contains additional information that was not contained in the affidavit in support for the search warrant at issue. Therefore, that additional information is outside this Court's probable cause review." (Doc. #37, PAGEID 116).

On December 8, 2025, Defendant filed the Motion for *Franks* Hearing, arguing that there was no reason to believe that the CI or CIs relied upon in the Affidavit was or were reliable. (Doc. #33, PAGEID 101-02, citing *Alabama v. White*, 496 U.S. 325 (1990)).

> In Mr. Kincaid's case, he is asserting that the CI/s [*sic*] who claimed Kincaid had possession of a large number of pills for sale was on Kincaid's premises for the purpose of constructing a roof on a shed on the property. Kincaid further submits that it was the CI who actually brought the pills into his shed, not the kitchen area, placed them on a counter, and photographed them. Kincaid additionally maintains that an adequate police investigation should have

disclosed that the location of the drugs was wrong and further that the police were reckless in stating that these pills, which were photographed on an unreliable CI's phone, belonged to Kincaid.

(*Id.* at PAGEID 102).

The matter is now ripe for decision.[1]

## I.    Legal Standards

The Fourth Amendment to the United States Constitution provides that:

"The right of the people . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AM. IV.  "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure."  *Illinois v. Krull*, 480 U.S. 340, 347 (1987).

In determining whether probable cause existed, "[t]he standard of review for the sufficiency of an affidavit 'is whether'" under the totality of the circumstances, "'the [judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'"  *Greene,* 250 F.3d at 479, quoting *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991)).  Moreover, to avoid application of the good-faith

---

[1] While the Government did file a memorandum *contra* on January 5, 2026 (Doc. #36), that memorandum was filed more than twenty-days after the filing of the Motion for *Franks* Hearing and without leave of court, making it untimely.  S.D. OHIO CRIM.R. 1.2, 1.3; S.D. OHIO CIV.R. 7.2(a)(2).  Thus, the Court did not consider the Government's response in reaching its decision.

exception, the defendant must show that the officer had "no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 923. "Thus, an officer would not 'manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Carpenter*, 360 F.3d at 596, quoting *Leon*, 468 U.S. at 923.

To obtain a *Franks* hearing and obtain suppression of evidence that was discovered pursuant to a facially valid warrant, a defendant must show: (1) "that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit[,]" and (2) "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015), quoting *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013).

## II. Analysis

### A. Probable Cause

Defendant raises several arguments as to why Orick's Affidavit was an insufficient basis upon which Judge Melnick could reasonably rely to determine that probable cause existed to search the residence. The Court considers them in turn.

1. <u>Insufficient evidence within the four corners</u>: Defendant argues that the Affidavit contained no evidence connecting Defendant to his older son conducting drug sales or parcels containing purported drug paraphernalia

addressed to his young son. (Doc. #21, PAGEID 46). As this "guilt by association" has no relevance to actual culpability by Defendant, such evidence could not have been the basis of a probable cause finding. (*Id.*, quoting *Lopez-Medina*, 461 F.3d at 741-42).

In deciding a motion to suppress, the Court does not evaluate whether each piece of evidence cited in the affidavit is valid. Rather, the Court looks at all evidence in the affidavit under a totality of the circumstances analysis. *Greene*, 250 F.3d at 479. There was ample evidence in the Affidavit unconnected to Defendant's offspring supporting Judge Melnick's probable cause finding. Specifically, Orick detailed statements from one or more CIs and from multiple arrestees that they had either bought fentanyl from Defendant at the Property or saw evidence of processing fentanyl into pills at the Property. (Doc. #29-1, PAGEID 88-89). Orick also stated that law enforcement observed a car associated with drug trafficking while surveilling the Property, while the pickup truck associated with Defendant and registered to Defendant's girlfriend was also at the Property at that time. (*Id.*). Even assuming that Defendant had no connection to his older son's drug dealing and to his younger son receiving parcels at the Property, there was still more than enough evidence for Judge Melnick to conclude that "there [was] a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place[,]" *Davidson*, 936 F.2d at 859 (internal quotation marks and citation omitted), and, thus, that probable cause existed.

12

2.    Stale information in the Affidavit: Defendant argues that the February

2024 statement from a CI that he had seen Defendant possess fentanyl and pills

should not have been considered, since Orick stated that "[t]his information *at the*

*time of disclosure* was considered stale and not actionable." (Doc. #21, PAGEID

46 (emphasis added), quoting Doc #29-1, PAGEID 88). However, Orick's

prepositional phrase "at the time of disclosure" is dispositive. The Government is

not arguing that Orick could have obtained a search warrant in February 2024

based solely on the CI's statement. Rather, it was one data point among many

over the course of more than a year suggesting that Defendant was trafficking

fentanyl at the Property. The United States Court of Appeals for the Sixth Circuit

has consistently held that "evidence of ongoing criminal activity will generally

defeat a claim of staleness." *Abboud*, 438 F.3d at 573 (internal quotation marks

omitted), quoting *Greene*, 250 F.3d at 481. The Affidavit being replete with

evidence of Defendant engaging in ongoing drug trafficking means that the

information was not stale.

3.    Corroboration of CI: Defendant argues that the CI's information that

prompted law enforcement surveillance of the Property—that Defendant had

received several "bricks of fentanyl and was processing them into pills"—lacked

corroboration, and thus could not have been relied upon in making a probable

cause determination. (Doc. #21, PAGEID 46 (internal quotation marks omitted),

quoting Doc. #29-1, PAGEID 88). However, that April 2024 statement from the CI

was not the catalyst for the search warrant application; rather, it was a statement

by a CI on March 23, 2025, that Defendant had significant quantities of fentanyl in both pill and brick form at the Property. (Doc. #29-1, PAGEID 89). This CI had a history of providing reliable information that led to the discovery of illegal drugs, and there were numerous statements from other sources during the course of the investigation suggesting that Defendant was trafficking fentanyl at the Property. (Doc. #29, PAGEID 79-80; Doc. #29-1, PAGEID 88-89). Contrary to Defendant's argument, the corroboration did not come from Defendant's "stale criminal history related to drugs." (Doc. #21, PAGEID 47).

Moreover, as discussed by the Government, the CI described the illicit substances with particularity, which lends greater weight to the statement. (Doc. #29, PAGEID 78, citing *Woosley*, 361 F.3d at 927; *Tilman*, 404 F. App'x at 952 (6th Cir. 2010); Doc. #29-1, PAGEID 88-89). While Orick failing to specify in the Affidavit whether there were statements from only one or from multiple CIs is regrettable, the reliable history and external corroboration of the March 2025 statement is more than enough for that statement to serve as part of Judge Melnick's probable cause determination.

4. <u>Inaccurate information in the Affidavit</u>: In Reply, Defendant argues for the first time that:

> [H]e was building a shed at his premises and that an individual he believes to be the CI was helping him construct the roof for this structure. The CI believed to be at issue brought a large number of pills with him into the shed that he was attempting to sell to Mr. Kincaid. The CI photographed the pills with his own telephone. Mr. Kincaid states that he told this individual to leave his premises and that Kincaid had nothing to do with

14

these drugs that were brought onto his premises without his consent. In fact, the Affidavit indicates this occurred in his kitchen, when the incident actually occurred inside the shed that was under construction.

(Doc. #32, PAGEID 96-97). Arguments raised for the first time in a reply memorandum, even in a motion to suppress, are generally considered waived. *See, e.g.*, *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."); *United States v. Ford*, 183 F. Supp. 3d 22, 38 (D.D.C. 2006) ("These new bases for suppression are waived because Ford raised them for the first time in his reply brief."). However, even if the Court were to consider the argument herein, it is unavailing. As discussed above, the CI had provided reliable information on drug trafficking in the past, and the information the CI provided was corroborated by law enforcement observation and multiple other sources. Orick reasonably relied on the CI's statement at the time of drafting the Affidavit, and Judge Melnick, in turn, reasonably relied on the statement's accuracy at the time of issuing the search warrant. To invalidate on the basis of the CI's inaccuracy is to engage in a backwards-looking analysis that this Court cannot do. *See United States v. Sember*, 170 F. Supp. 3d 1049, 1061-62, 1063 (S.D. Ohio 2016) (Rose, J.) (overruling in relevant part a motion to suppress because the officer had reasonable belief for including a statement in the affidavit, even though the underlying basis for the statement turned out to be inaccurate).

15

5.   <u>Nexus between drug trafficking and the Property</u>: Although

Defendant does not argue a lack of nexus between the alleged criminal activity

and the Property, the Affidavit, as discussed above, easily provided probable

cause "to believe that the evidence would be found at the place cited." *Davidson*,

936 F.2d at 859.

Accordingly, probable cause existed for Judge Melnick's issuance of the

warrant.  Defendant has not demonstrated a Fourth Amendment violation, and the

Motion must be overruled.[2]

**B.   Good-Faith Exception**

*Leon* and its progeny establish the good-faith exception as a failsafe if it

were determined later that the search warrant that law enforcement officers

executed lacked probable cause.  *See, e.g.*, *Carpenter*, 360 F.3d at 595 (internal

quotation marks omitted), quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th

Cir. 2002) (Good-faith exception requires "a less demanding showing than the

'substantial basis' threshold required to prove the existence of probable cause.").

Accordingly, because probable cause existed for the issuance of the warrant, the

Court need not determine whether the good-faith exception would have applied.

**C.   Motion for *Franks* Hearing**

Defendant raises two main arguments in support of his prayer for a *Franks*

hearing.  *First*, as discussed previously, Defendant essentially claims that he was

---

[2] As Defendant's Motion to Suppress fails on the merits even considering the material that the Government argues should be stricken, the Government's Motion to Strike (Doc. #37) is OVERRULED AS MOOT.

framed by the CI through the latter bringing drugs to the Property and, through his photographing the fentanyl at the Property and his statements to law enforcement, making it seem as though the fentanyl was always in Defendant's possession. (Doc. #33, PAGEID 102). Defendant argues Orick was reckless in averring that the pills photographed by the CI belonged to Defendant. (*Id.*). *Second*, Defendant asserts that "[w]ith respect [to] evidence concerning the cutting of fentanyl with a purple substance, Mr. Kincaid submits that the police knew that the evidence did not support doing this and that common sense should have alerted them that it made no sense for him to have been doing this." (*Id.*).

Defendant's Motion is unavailing for several reasons. Defendant did not attach a declaration or submit any evidence supporting either of the above barebones legal conclusions, making his arguments purely speculative. Second, as discussed above, the photograph of the fentanyl pills came not from the CI, but from a Jason Davidson; the CI merely confirmed that the countertop that the pills were on what looked like the Defendant's countertop. (Doc. #29-1, PAGEID 88). Defendant also fails to explain why law enforcement should have known that Defendant would not use colored chalk to cut fentanyl for sale; nor does he explain why common sense should have alerted law enforcement that he would not use chalk to color the fentanyl he sold. More importantly, Defendant has not put forth any evidence that Orick knew or should have known that those statements were false when he submitted the Affidavit. As Plaintiff has failed to meet the first prerequisite for a *Franks* hearing—showing that Orick knowingly or

17

intentionally included a false statement in the Affidavit, or included a false statement with reckless disregard for the truth, *Pirosko*, 787 F.3d at 369—the Motion for such a hearing must be overruled.

## III.    Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (Doc. #21) and Motion for *Franks* Hearing (Doc. #33) are OVERRULED, and the Government's Motion to Strike (Doc. #37) is OVERRULED AS MOOT.

IT IS SO ORDERED.

January 9, 2026

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

18